Argued and submitted October 25, 1989, affirmed on claim for attorney fees; otherwise reversed and remanded January 17, reconsideration denied April 18, petition for review allowed July 10, 1990 (310 Or 195)

SHOCKEY,
*Appellant,*

*v.*

CITY OF PORTLAND et al,
*Respondents.*

(8611-06957; CA A49282)

785 P2d 776

Richard C. Busse, Portland, argued the cause and filed the briefs for appellant. With him on the reply brief was Donald B. Potter, Portland.

Harry Auerbach, Deputy City Attorney, Portland, argued the cause and submitted the brief for respondents.

Before Joseph, Chief Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Plaintiff contends that the City of Portland (city) and two of its employees, defendants Lang and Irvin, fired him in retaliation for his circulating a petition protesting a work policy. He alleged claims for common law wrongful discharge and under 42 USC § 1983,[1] asserting that defendants violated his right to free speech under the First and Fourteenth Amendments. He also brought a claim against Lang and Irvin as individuals, alleging that they had intentionally interfered with his economic relations with city. He sought punitive damages on his § 1983 claim and, under 42 USC § 1988,[2] reasonable attorney fees. He also requested attorney fees incurred in reinstatement proceedings before the city's Civil Service Board.

In pretrial motions, the trial court struck plaintiff's requests for attorney fees and granted defendants' partial summary judgment on the § 1983 claim for punitive damages. After plaintiff rested his case, the trial court found that there was no evidence that he was fired for circulating the petition and, accordingly, granted defendants' directed verdict on the § 1983 and wrongful discharge claims. Although the trial court allowed plaintiff's intentional interference claim to go to the jury, it struck any reference to his right to free speech. The jury returned a verdict for plaintiff, but awarded no damages. Plaintiff appeals; we affirm in part and reverse and remand in part.

Plaintiff was employed as a waste water mechanic for city and worked under Lang and Irvin. During 1984, he learned that city, in an effort to comply with administrative rules that prohibit the wearing of respirators over facial hair,

---

[1] 42 USC § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or cause to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit or equity, or other proper proceeding for redress."

[2] 42 USC § 1988 provides, in pertinent part:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, * * * the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

intended to adopt a clean shaven policy for all waste water mechanics. Plaintiff strongly opposed the policy. He has worn a beard for 25 years, because he develops an inflammatory skin rash when he shaves and because he has a "weak chin." He circulated a petition expressing dissatisfaction with the policy. The petition reads:

"We, the undersigned, find the proposed rules demanding that beards be shaved before a respirator test can even be taken to be arbitrary and discriminatory. The wearing or not wearing of beards was not a condition of employment and any hazards that exist now existed at that time. Furthermore, if everyone on site is to be available in a chlorine emergency, the questions of fit, maintenance and hygiene of the respirators, the supplying of respirators for those who wear glasses, training of all employees in their use, hazard pay, and the availability of respirators for office staff, contractors' employees and visitors must be answered. The aforementioned proposed rules do not take into account the use of respirators by the last three mentioned groups. It would be far more practical to have a volunteer crew, specially trained and outfitted to deal with chlorine in emergency and non-emergency situations."

Despite the petition, the policy was implemented on August 1, 1984. Plaintiff subsequently refused to shave his beard, and, in an attempt to receive an exemption from the policy, he submitted medical evidence that he has a psychological attachment to his beard and that he develops a skin rash when he shaves. Nonetheless, he was discharged on June 11, 1985. Shortly thereafter, he commenced this action, claiming that he was fired in retaliation for circulating the petition.

■ Plaintiff first argues that the trial court erred in allowing defendants' motion for a directed verdict on his wrongful discharge and § 1983 claims and in striking any reference to his right to free speech in his intentional interference claim. A directed verdict should be entered only when a reasonable person could draw only one inference from the evidence. *Van Den Bron v. Fred Meyer, Inc.,* 86 Or App 329, 738 P2d 1011 (1987). When reviewing a directed verdict, we interpret the evidence in the light most favorable to the non-moving party, who is entitled to every reasonable inference supported by the record. *Dennis v. McLean,* 53 Or App 282, 631 P2d 839, *rev den* 291 Or 771, 642 P2d 308 (1981). With

those principles in mind, we hold that there was evidence of a causal link between plaintiff's petition and his termination.

■ Plaintiff testified that Irvin and Lang appeared hostile toward his attempt to receive an exemption from the policy. Other employees testified that management had retaliated against other workers who spoke out against management practices or on safety issues. When asked about the petition, Lang admitted that it made him angry and caused him some anxiety. Irvin admitted that he did not assist plaintiff in finding other comparable city employment before terminating him, although he had done so for other employees who did not comply with the policy. Irvin also admitted that he ignored reports concerning plaintiff's psychological attachment to his beard. Even though 13 months had elapsed between the petition and his termination, we conclude that a jury could infer from the totality of the evidence that the petition was a motivating factor in plaintiff's termination.

■ Defendants argue that, even if plaintiff was fired for circulating the petition, the trial court did not err because his speech was not protected by the First Amendment. Citing *Connick v. Meyers*, 461 US 138, 103 S Ct 1684, 75 L Ed 2d 708 (1983), they contend that plaintiff's petition is not protected because it does not relate to "matters of public concern." We disagree. Although plaintiff may have been motivated to circulate the petition for personal reasons, it questioned the practicality of and hazards inherent in the proposed policy. A major purpose of the First Amendment is to protect free discussion, including the manner in which the government operates. *Mills v. Alabama*, 384 US 214, 218, 86 S Ct 1434, 1436, 16 L Ed 2d 484 (1966). Plaintiff's petition was constitutionally protected.

■ Plaintiff also argues that the trial court erred in striking his request for attorney fees under § 1988 and in granting defendants' motion for summary judgment on his claim for punitive damages under § 1983. The trial court based those rulings on its determination that such damages are prohibited by the Oregon Tort Claims Act (OTCA). Under *Rogers v. Saylor*, 306 Or 267, 760 P2d 232 (1988), and our opinion in the same case, 88 Or App 480, 746 P2d 718 (1987), both rulings were in error.[3]

---

[3] In that § 1983 action, we allowed attorney fees, but held that the OTCA precludes a claim for punitive damages. 88 Or App at 484. On review, this court's decision to allow attorney fees was not contested, and the Supreme Court held that punitive damages are also recoverable. *Rogers v. Saylor, supra*, 306 Or at 278.

 Plaintiff also argues that the trial court erred in striking his request in his intentional interference claim for attorney fees incurred in reinstatement proceedings before city's Civil Service Board. Attorney fees and other expenses from another proceeding may be recovered in an action against a defendant when the defendant's charged wrongful conduct has involved the plaintiff in previous litigation with a third party. *C.I.T. Group/Equipment Financing, Inc. v. Young*, 99 Or App 270, 272, 782 P2d 169 (1989). The preceding litigation, however, did not involve a third party but rather the same defendants. Therefore, the rule of damages involving prior litigation with a *third party* is not applicable. The trial court properly struck the claim for attorney fees before the Civil Service Board.

Plaintiff finally argues that the trial court erred in denying his motion for a mistrial. The motion was based on the trial judge's acknowledgement that he "wouldn't have taken the case" had he known that he would be requested to evaluate the testimony of a certain city employee, a personal acquaintance of the judge who had been involved in plaintiff's termination. We need not discuss that contention, because the problem should not arise on retrial.

Affirmed on the claim for attorney fees incurred before the Civil Service Board; otherwise reversed and remanded for proceedings not inconsistent with this opinion.